Carr, J.
The bills of exceptions, in this case, are hardly intelligible, especially to one no better versed in accounts than I am. I see enough, however, to be of opinion, that the court below clearly erred, i understand the court to have ruled, that if A. owes B. a debt to-day, for which C. is his surety, and assigns bonds or accounts to his creditor, in part payment; and if, at any time before the money on these assigned debts is collected, A. incurs a new debt to B. for which there is no security; in such case, B. may apply the money when collected to the payment of this last debt, and recover the first debt from C. the surety. This is giving a latitude to the doctrine of election as to the application of payments, beyond any thing I have ever seen. The very idea of election supposes something to elect between. Where .a man owes a debt by bond and one by open account, and makes a payment, he may direct the application of it, because it is his: if he gives no direction, the creditor may apply it to which of the two debts he chooses. But if there is but one debt due at the time of the payment made, there can be no such thing as election, and there need be no direction of the debtor: the application must be to the only debt he owes. A.nd though the payment be not made in money, it is equally clear, that the property, or evidence of debt, or whatever it may be that is assigned in payment, must go towards paying the existing debt, and not a debt of the existence of which the parties could not, without the gift of prophecy, have dreamed at the time.
Tucker, P.
The first exception was taken (it seems) to the admission of the evidence to prove the application of *332 the proceeds of the assigned debt. If this assigned fund was no/j specially directed to be applied to the credit of Richard and Robert Steele, or one of them, it could not be so applied by Wilson; for it was the fund of William &p Robert Steele, which, without their assent, could not be applied to pay the several debt of Robert Steele. Under this supposition, then, there was no ground for introducing the evidence, since the question was not a question of the proper application of a payment, but it was properly a question, whether these funds had been authorized to be appliéd, in any event, whether first or last, to the discharge of R. S.’s debt; and to this matter the evidence had no reference. It ought not therefore to have been admitted: for it was peculiarly calculated, in this case, to mislead the jury from the real question to one which was not properly before them. If, on the other hand, this fund was directed to be applied to the discharge of R. S.’s debt, it must be so applied; Wilson had no discretion; and the evidence was improper in this view.
As to the second exception, I think the instruction given was, in the abstract, erroneous; but I am also of opinion, that this exception, as well as the first, is so imperfectly taken that the court cannot see what judgment ought to be given, and the cause ought to be sent back for a new trial.
Cabell, J. concurred.
After the opinion of the court was announced, the attorney general cited the cases of Brewer v. Knap, 1 Pick. 332. and Peters v. Anderson, 5 Taunt. 596. 1 Eng. C. L. R. 202. and asked the court to reconsider the opinion it had given, as to the right of the creditor to make the application of the proceeds of the debt of C. Sp T. assigned to him.
Cabjr, J.
The case of Brewer v. Knap was the case of a lease of a house for one year, by deed, at 400 dollars, payable quarterly, two sureties being bound with the lessee for the rent. After the year was out, the tenant held over *333 for a year and three quarters, without any new contract. During the second year, there was a payment of 230 dollars made by the lessee; but whether this payment was made before or after the rent of the second year became due, did not appear; and that it did not, is expressly stated as a part of the case. Debt for rent was brought on the deed. If the payments were all to be applied to the first year’s rent, it was discharged: but the plaintiff applied the 230 dollars to the rent of the second year: and the question was, whether, in the absence of all direction by the tenant, he had a right to do so. The court decided that he had; but it did not tone!) the question, whether a payment made where there is but one existing debt, and ex necessitate made to that debt, can be applied by the creditor to an after contracted debt. The case did not raise this question. The proposition which the counsel there discussed and 'contended for, was, that if one of the debts was guarantied, and the other not, the application should be made, so as first to relieve the surety; and the court, saying that it had heard or seen no authority to establish that point, held to the general doctrine, that where there are several debts, and a payment made without appropriating it to either, the creditor may apply it to whichever he pleases. The other case of Peters v. Anderson was this: the plaintiff served the defendant as surgeon, at Banco island, for three years, under an indenture, according to the terms of which his salary for the three years amounted to £226. 12. 0. but during the same time he had received £97. 2. 10. leaving then due £129. 9. 2. At the end of the three years, the plaintiff agreed (not under seal) to serve defendant in the same capacity at the same place, at the increased salary of £ 175. a year, under which contract he served three years and a quarter, and became entitled to £ 568. 15. 0. but ho received during that time £ 147. 7. 4. which if deducted from the last sum, left due to him £421. 7. 8. For the balance of £129. 9. 2. he brought covenant on the deed; for the balance of £ 421. 7. 8. he brought assumpsit. The cases were referred to an arbitrator, and he awarded to the plaintiff the two sums for *334 which he had sued, but added, that the defendant wished to take the opinion of the court, whether, according to the rule of law, the payments made during the last three years ought not to be applied to discharge the specialty debt first ? and to enable him to do this, the arbitrator stated, that the different sums claimed by the defendant as a set-off, were paid on account generally, and not applied by the defendant, in discharge of the first debt alone, nor was any balance struck at the close of the first contract, in the account current kept by the defendant’s agent at Bance island, and, by consent, he annexed to his award a copy of the account. The court said, that the sums paid during the second term of three years on the general account current, being at last equally applicable to both debts, would not avail the defendant, by way of set-off in the first action; and it stated the ground of this to be, the general rule, that the debtor, when paying, not directing the application, that right devolves on the creditor, and was here exercised by him. In this case, as in the last, the question, whether a payment, made when there is but one debt, can be applied to an after contracted debt, was raised neither by the bar nor the bench. The case went expressly, on there being two existing debts, and, of course, something to elect between, when the payments were made. I think, then, that neither of those cases bear upon the opinion delivered by the,court, in this casé.
Cabell, J.
I see nothing in the authorities cited to alter the opinion of the court.
Tucker, P.
I have examined the cases cited by the attorney general, since the opinion of the court was intimated in this case. I have also re-examined the record, and reflected maturely upon the question which has been pressed on the part of the appellee. My impressions have been confirmed, rather than weakened, by that reflection. I am indeed satisfied, that the second bill of exceptions, like the first, is too imperfect to enable us to- know the state of facts, upon which the instruction was moved; but understanding the *335 instruction to be, that the creditor, in this case, was not bound, to apply the fund assigned to him, until the money had been collected, and that then he had a right to apply it to a debt which arose subsequently to the assignment but antecedent to the collection, 1 cannot assent to the proposition. If at the time of assignment there was but one debt due, the amount assigned could only be fairly applicable to it. There could be no election ; for election means choice, and choice can only exist where there are two things at least to choose between. Moreover, the debtor who assigns, can have but one object, which is to pay the subsisting debt. He looks to no other, and if the application were made to another not then subsisting, this would take from him the preferable right of election, which it is conceded he has. The cases cited do not assert any such principle. In both of them, the payment was made when there were two distinct and separate responsibilities; though, in each case, it is left doubtful, whether the last debt was actually due when the payment was made. But in each, the engagement to pay was subsisting, though the debt might have been solvendum in fiduro. Those cases, then, (if we accede to their correctness), do not sustain the instruction here. For my own part, I think they have strained the doctrine of the creditor’s right to apply the payments far beyond what is reasonable.
I must remark, however, as I said before, that I do not see how this doctrine can properly come in question in this case. If W. R. 8. assigned to Wilson the debt due them by C. If T. they must either have directed to what the proceeds should be applied, or they did not. If they did so direct, at the time of the assignment, that direction must be obeyed. If they did not, then Wilson could not apply their funds to pay Roberts debts to him, without W. fy R. 8is subsequent orders. If such orders were given, they must be obeyed; if not, he stood, when the funds were collected, debtor to them for so much, and they might have valued upon him accordingly. So too, holding this account, and in expectation of those funds, they may have valued upon *336 it, with his assent, for the 600 dollars in January 1823; and if that was the state of things, the fund was properly applied to the liquidation of that debt.
Judgment reversed, and cause sent back for a new trial.